IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV276-W-2
(3:05CR416-W[1] and 3:07CR121-W)

MONICA RENEE' RAGIN,  )
    Petitioner,  )
                                )
        v.                     )          O R D E R
                                )
UNITED STATES OF AMERICA,  )
    Respondent.  )
_____)

**THIS MATTER** is before the Court on initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, filed June 21, 2010 (Doc. No. 1). For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 13, 2005, a Bill of Indictment was filed charging Petitioner and another individual with, inter alia, conspiring to defraud the Government, in violation of 18 U.S.C. § 371 (Count One). (Case No. 3:05cr416, Doc. No. 1).

On April 13, 2006, Petitioner entered into a written Plea

---

[1] This case originally was assigned to the Honorable Richard L. Voorhees, United States District Judge. However, following the appointment of the undersigned to the bench, this matter along with Petitioner's new case (Case No. 3:07CR121) ultimately was assigned to the undersigned.

1

Agreement with the Government wherein she agreed to plead guilty to the conspiracy charge in exchange for the Government's promise to dismiss the two remaining charges in the Indictment. (Id., Doc. No. 21 at 1). Concerning the offense, the parties' Agreement stipulated that under United States Sentencing Guidelines § 2B1.1 ("U.S.S.G.," hereafter), the Base Offense Level was six, that two points could be added under U.S.S.G. § 2B1.1(b)(10(C)(I) because the offense involved the unauthorized use of a means of identification to obtain other means of identification, and that two points each could be added under U.S.S.G. §§ 3B1.3 and .4 because Petitioner abused her position of trust and used a minor to effectuate her crimes. (Id. at 2).

Concerning waivers, Petitioner relinquished several rights, including her right to directly or collaterally challenge her conviction and sentence on any grounds except ineffective assistance of counsel and/or prosecutorial misconduct, and on the ground that her sentence was calculated on the basis of a finding that was inconsistent with an explicit stipulation in the Plea Agreement. (Id. at 5). Furthermore, Petitioner stipulated that any sentence imposed within the applicable Guidelines range as determined by the U.S. Probation Office and pursuant to any departures from the otherwise applicable range is per se reasonable, and she waived her right to contest such a sentence on the

2

ground that it either was unreasonable or an abuse of the Court's discretion. (Id. at 6).

On May 3, 2006, Petitioner appeared before the Court to tender her guilty pleas. At that time, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that she voluntarily and intelligently was tendering her plea. After being placed under oath, Petitioner made statements which establish that she understood the nature of the proceedings, the charge she was facing and its corresponding penalties. (Id. Doc. No. 22 at 2).

Petitioner's answers further establish that she understood and consented to the terms of her Plea Agreement; that she had discussed all of the foregoing matters and her rights to proceed to trial with her attorney; that she was voluntarily waiving those rights; that she was tendering a guilty plea to the conspiracy charge because she, in fact, was guilty of that offense; and that she was satisfied with counsel's services. (Id. at 2-4).

In addition, Petitioner's answers establish that no one had threatened, intimidated or forced her to enter a guilty plea and that, other than the promises set forth in her Agreement, no one had made her any promises of lenience in order to induce her plea. (Id. at 4). Accordingly, at the conclusion of that hear-

3

ing, the Court determined that Petitioner freely and knowingly was entering her guilty plea, and the Court accepted the plea. (Id. at 5).

In the meantime while Petitioner was awaiting sentencing, on June 14, 2007, a Bill of Information was filed charging her with one count of bank fraud and aiding and abetting that offense, all in violation of 18 U.S.C. §§ 1344 and 2. (Case No. 3:07cr121-W, Doc. No. 1). Also on that date, a Plea Agreement Addendum was filed wherein Petitioner agreed to plead guilty to the single charge in the Information in exchange for the Government's promise not to pursue any additional charges against her. (Id., Doc. No. 4).

As to the bank fraud charge, the parties stipulated that the amount of actual loss that was known to or reasonably foreseeable by Petitioner was in excess of $120,000 but less than $200,000, thereby increasing her Base Offense Level for that offense from 9 to 19. (Id. at 1-2). That Addendum further incorporated all of the other terms of the original Plea Agreement. (Id. at 2).

On May 18, 2009, the U.S. Probation Office filed a final Pre-Sentence Investigation Report ("PSR," hereafter) (Case No. 3:05cr416, Doc. No. 41), supplemented on June 23, 2009. (Id., Doc. No. 43). Such PSRs reflect a recommendation that Petitioner's Total Offense Level be set at 24, in part, on the basis

of a determination that the bank fraud had involved more than $400,000 but less than $1,000,000 in losses. (<u>Id</u>. at ¶¶ 7 and 27). The PSRs further recommended that Petitioner's Criminal History be set at I, thereby yielding an advisory sentencing range of 51 to 63 months. (<u>Id</u>. at ¶ 59). However, those calculations were in conflict with Petitioner's Plea Agreement Addendum inasmuch as the parties had stipulated to a lower Base Offense Level based upon less than $200,000 in losses. (Case No. 3:07cr121, Doc. No. 4 at 1-2).

On June 22, 2009, the Government filed a Motion for a Downward Departure under both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Case No. 3:05cr416, Doc. No. 44). Notwithstanding the parties' stipulations as set forth in their original and amended Plea Agreements, the Government's Motion requested a 15% reduction in the sentencing range which the Probation Office had calculated, yielding a range of 41 to 51 months imprisonment. (<u>Id</u>. at 3).

On June 23, 2009, Petitioner appeared before the Court for a Factual Basis and Sentencing Hearing in Case No. 3:05cr416, and for an Initial Appearance, a Plea and Rule 11 Hearing and a Factual Basis and Sentencing Hearing in Case No. 3:07cr121. At the outset of those proceedings, Petitioner waived her right to proceed under an indictment in her second case. (Case No. 3:07-

cr121, Doc. Nos. 3 and 7: Transcript of proceedings at 6, filed August 4, 2009, "Sent'g. Tr.," hereafter). As a matter of formality, the Court next arraigned Petitioner and entered a "not guilty" plea for the bank fraud offense as charged in the Information. (Sent'g. Tr. at 9-10).

Thereafter, the Court re-engaged Petitioner in its plea colloquy in connection with the bank fraud charge. During that process, Petitioner again advised that she understood the charge and penalties, the terms of the addendum to her Plea Agreement, and the numerous rights that she was waiving, including her rights to appeal or to collaterally attack her case. (Sent'g. Tr. at 11 and 16-18 and 20-21). Petitioner again acknowledged that other than the terms of her amended Plea Agreement, no one had made her any promises and no one had threatened her in order to persuade her to accept that agreement; and that she was guilty of the subject charge. (Sent'g. Tr. at 15-16 and 26).

As to Sentencing, the Government orally revised its Motion for a Downward Departure to make it coincide with the parties' stipulations from the Plea Agreement. (Sent'g. Tr. at 32). That revision excluded the additional losses which were identified in Petitioner's PSR, it calculated her pre-departure Offense Level at 19, it requested a two level departure to Level 17, and re-commended a sentence at the lowest point of the 24 to 30-month

advisory range.  (Sent'g. Tr. at 31-39).  The Court adopted those revisions and concluded that the correct advisory sentencing range was 24 to 30 months.  (Sent'g. Tr. at 39).

Thereafter, the parties made lengthy statements to the Court concerning Petitioner's sentence.  Pertinent here, defense counsel advised the Court regarding Petitioner's severely disabled son and explained that part of Ms. Ragin's criminal conduct was motivated by her desire to provide for him.  In particular, counsel stated:

> My client has a special needs child.  He is [15] years old.  He has severe mental retardation. Cerebral palsy.  Although my client works in the afternoon, the child's day begins early.  He is handicapped to the extent where he is incontinent overnight.  My client's day begins with cleaning up the results of that every morning; hospital bed, rubberized sheets, things like that.  She cares for him, feeds him.  Puts him in the chair.  He's picked up around 7:30 in the morning, goes to school; is taken care of there until about 2:00, 2:30 in the afternoon. . . This is not an argument for a variance or a downward departure, Your Honor. I just want the Court to understand that this is, although a crime, not a crime motivated of abject greed and selfishness . . . I've not been practicing very long, but in my ten years of practice I have not seen any of my clients ever as committed to their child as this client. . . We have some friends here that wanted to address the Court.  I don't know if that's necessary given all that you have gone through.  But I would just say that in support of [Petitioner], in support of her character, and ask the Court to again adopt

7

>     the recommendation of the government, the
>     government's recommended range in the low end
>     of the Guidelines, recommended the 5K.

(Sent'g. Tr. at 39-41).

Petitioner addressed the Court in her own behalf, also explaining her son's difficulties and the role that she was playing in his life as caretaker. Petitioner told the Court:

>     I do have a son with cerebral palsy, autism
>     and scoliosis. . . You know, I don't get any
>     help for him. I haven't asked for any help
>     for him. My son was born blind and deaf, and
>     I was told to bring him home just to make him
>     comfortable. . . I have an 18-year-old
>     daughter that has been accepted into several
>     colleges . . . She helps me as well. I am a
>     single mom. . . I'm angry with myself because
>     I put myself in the position; to be taken
>     away from my children. . . .I beg, you know,
>     for forgiveness from everyone because I have
>     hurt a lot of people. . . But I ask that you
>     make the best ruling that you can because I
>     don't have anything or anyone else to turn to
>     for my son. . . I apologize for hurting my
>     family the way I did because we have no one"

(Sent'g. Tr. at 41-44). However, Petitioner also explained that her son had improved to the extent that he could see and hear, could feed himself, and he could crawl upstairs. (Sent'g. Tr. at 43). Equally critically, even after counsel indicated that he was not seeking any greater reduction or downward variance, Petitioner told the Court that she loved her attorney; and that he had been "very great," working on her case despite her inability to pay for his services. (Sent'g. Tr. at 43).

8

After hearing from the parties, the Court explained the three-step sentencing process to Petitioner and highlighted two sentencing factors: the nature and circumstances of the offense and the history and characteristics of the defendant. (Sent'g. Tr. at 45-46.) In regards to the former factor, the Court opined that Petitioner "took this wrong course maybe for reasons that are more legitimate than others, in the sense [that she was] trying to help [her] son who is a special needs son. . . ." (Sent'g. Tr. at 47-48). Ultimately, the Court sentenced Petitioner to a total of 24 months imprisonment for both cases and did not impose a fine in light of her financial circumstances. (Case No. 3:05cr416, Doc. No. 45).

In addition to the foregoing, the Court put a recommendation on the record for Petitioner to be confined as close to Charlotte as possible and for her to be considered for work release in accordance with the Federal Bureau of Prison's policies. (Sent'g. Tr. at 53-58). The Court also granted Petitioner's request to remain on bond and self-surrender upon her designation to a prison facility. (Id.).

Subsequently, the Court twice granted Petitioner's requests to delay her reporting dates. (Case Nos. 3:05cr416, Doc. No. 49 and 3:07cr121, Doc. No. 9). On the basis of those extensions Petitioner was sentenced in June 2009 but she was not required to

report to prison until January 27, 2010. (3:05cr416, Doc. No. 53).

Petitioner did not appeal her case, but instead filed the instant Motion to Vacate on June 21, 2010. (Doc. No. 1). Petitioner now argues that counsel was ineffective for having failed to make an extensive presentation of background information in order to make and support a motion for a downward variance under 18 U.S.C. § 3553(a)(1) and U.S. Sentencing Guidelines § 5H1.6 on the basis of her family ties and responsibilities. (Id. at 7).

## II. **ANALYSIS**

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed promptly to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief. The Court has conducted such a review and determined that Petitioner is not entitled to any relief on his claims; thus, neither a response from the government nor a hearing is required in this matter.

At the outset, the Court notes that Petitioner waived her right to challenge a sentence which was imposed within the properly calculated Guidelines range. Inasmuch as Petitioner does not allege that her Guidelines range was incorrectly calculated by the terms of her Plea Agreement she essentially has waived her

10

right to challenge the matter underlying her claim against counsel, i.e., that she should have received a downward variance.

In any case, with respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697. Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant re-

11

lief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Furthermore, in evaluating post-guilty plea claims of ineffective counsel, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Blackledge, 431 U.S. at 73-74. In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

Concerning the issue underlying Petitioner's claim against counsel, the law is clear that while the Sentencing Guidelines are advisory, a district court must ordinarily impose a sentence within the range specified by such Guidelines. Koon v. United States, 518 U.S. 81, 92 (1996). Further, even if the circum-

12

stances are atypical, outside the heartland and lean in favor of a departure or downward variance, it still remains within the court's discretion whether or not to make the departure or variance under 18 U.S.C. § 3553(a)(1) and/or U.S.S.G. § 5H1.6. See Rita v. United States, 551 U.S. 338, 364 (2007) (concurring) (noting the district court's discretion in connection with § 3553(a)(1)); United States v. Spring, 108 Fed. App'x 116, 121 (4th Cir. Sept. 7, 2004) (unpublished) (noting the district court's discretion with respect to § 5H1.6).

Turning back to the instant Motion, Petitioner here claims that counsel was ineffective for failing to "move for downward departure from otherwise applicable Guideline range in accordance with 18 U.S.C. § 3553(a)(1) and USSG 5H1.6" on the basis of her role as "sole caregiver" for her severely disabled son. (Doc. No. 1 at 7). Petitioner contends that counsel never called witnesses, such as doctors, teachers and medical experts, "to justify or investigate daily routine with [her] and her son to know that, with her son's limited mental and physical capabili-ies, their [sic] was no one who would provide humanitarian care for him, which made [her] 'irreplaceable' in his life." (Id. at 9). However, the record before the Court belies Petitioner's contention that counsel was ineffective in this regard.

First, it has not escaped the Court's attention that Peti-

13

tioner twice told the Court that she was satisfied with counsel's services -- during her first Rule 11 proceeding (Case No. 3:05cr416, Doc. No. 22 at 4 ¶ 30) and during her second Rule 11 proceeding when she indicated that if she were asked the same questions as in her first Rule 11 proceeding, her answers would have been the same. (Id., Doc. No. 47 at 26-27). Admittedly, Petitioner may not have been aware of counsel's decision not to seek a downward variance when she first expressed satisfaction with him; however, by the time she reaffirmed that satisfaction at the beginning of her sentencing hearing she, presumably, was aware that counsel had not conducted the type of investigation of her interaction with her son that she believed he should have conducted. Yet Petitioner still did not express any dissatisfaction with counsel during either her second Rule 11 proceeding or at sentencing. Indeed, as was previously noted by the Court, even <u>after</u> counsel made his presentation and indicated that he was not seeking a downward variance, Petitioner stood before the Court and expressed gratitude for his assistance.

Furthermore, the Court notes that notwithstanding her claim that counsel was ineffective at sentencing, the record shows that Petitioner continued to rely upon his assistance with securing extensions of her reporting date. Similarly, despite her claim of ineffectiveness, Petitioner did not immediately file this

14

Motion to Vacate as often happens in cases where petitioners believe that their attorneys were ineffective at sentencing. Rather, Petitioner waited nearly a full year after sentencing before bringing this Motion.

Moreover, although Petitioner claims that counsel should have presented additional information from doctors, teachers and medical experts, she does not explain why she did not bother to mention any of those people or the information they would have provided when she addressed the Court in her own behalf. Nor does Petitioner now specifically explain that information or how she believes it would have impacted her case. Under these circumstances, the Court is highly skeptical of Petitioner's belated attempt to paint counsel as deficient with regard to his handling of her sentencing hearing. Blackledge, 431 U.S. at 73-74; Via, 643 F.2d at 171.

Second, as also was previously noted by the Court, at sentencing counsel and Petitioner actually did present extensive information concerning her son's condition and her role as his care-taker. Therefore, in the absence of specific details about the additional information which Petitioner believes counsel should have presented, she simply cannot demonstrate deficient performance.

More critically, it appears to the Court that the circum-

15

stances on which Petitioner seeks to rely in support of her claim primarily occurred after the time that she was sentenced. That is, Petitioner reports that "[s]ince being incarcerated," her 19 year old daughter, who is a freshman at the University of North Carolina at Greensboro has encountered greater stress because her son now has 82-degree degeneration of his spine (Doc. No. 1 at 9) -- which degeneration is a three-degree change from what previously was reported to the Court (Case No. 3:05cr416, Doc. No. 48 ¶ 6). Petitioner also reports that this change has become life-threatening and requires surgery. (Doc. No. 1 at 9). Petitioner also reports that her son no longer has access to certain unspecified "benefits and services"; that her daughter has to rely upon his $630 per month SSDI benefits to care for him; and that the children are facing either homelessness or having to move in with family members who are "incapable or unwilling to be supportive due to the medical responsibilities of [P]etitioner's son." (Id.).

The Court appreciates that the foregoing changes in circumstances are quite serious; however, as Petitioner's Motion seems to reflect, these changes have occurred since the time that she has been incarcerated. As such, there was no way for either counsel or Petitioner to have raised these matters with the Court at the time of sentencing. Indeed, contrary to her belated

claims of ineffectiveness, it appears to the Court that these circumstances even caught Petitioner by surprise in that it was not her plan to leave her son in her daughter's care but to place him in a residential care facility as evidenced by the information in her requests for extensions of her reporting dates. (Case No. 3:05cr416, Doc. Nos. 48, 50 and 51). However, once that plan proved unsuccessful and Petitioner had to rely upon her daughter, she apparently began to second-guess her attorney's effectiveness.

Finally, and perhaps most significantly, by virtue of Petitioner's PSR, counsel's presentation and her allocution the Court was well-aware of her family ties and responsibilities, as those circumstances existed at the time of sentencing. The Court even made brief mention of those matters addressing the nature and circumstances of the offense. (Sent'g. Tr. at 46). As a result, the Court can state with all confidence that even if counsel had presented witnesses to buttress the showing which already was made, the Court would not have exercised its discretion to grant Petitioner the subject downward variance. See Elliott v. United States, 332 F3d 753, 768-69 (4th Cir. 2003) (finding that district court abused its discretion in departing downward under § 5H1.6 for defendant who was primary care-giver for an incapacitated husband who suffered from cancer, heart disease, diabetes,

memory loss and confusion); United States v. Wilson, 114 F.3d 429, 434 (4th Cir. 1997) (reversing downward departure based on § 5H1.6 where father who was 21 years old had remained with his newborn child rather than abandoning child); United States v. Rybicki, 96 F.3d 754, 759 (4th Cir. 1996) (holding that district court abused its discretion in departing downward under 5H1.6 based on defendant's responsibilities for his wife and son, both of whom had medical problems, including wife's fragile mental health); United States v. Maddox, 48 F.3d 791, 799 (4th Cir. 1995) (reversing downward departure for extraordinary family ties where district court found that defendant provided invaluable care for his severely mentally disabled sister and his mother and was "crucial to the structure and stability of his family"); and United States v. Stone, 85 Fed. App'x 925 (4th Cir. Jan. 22, 2004) (unpublished) (reversing downward departure under several sections, including 5H1.6 for father of child who was severely disabled, and required almost constant care from a spouse who was ill and unable to care for herself). But see United States v. Colp, 249 F. Supp. 2d 740 (E.D. Va. 2003) (awarding downward variance under Guidelines for defendant who was sole care-taker of spouse who had sustained a traumatic brain injury resulting in functional and cognitive deficits with his memory, reasoning and problem solving, in a seizure disorder, and in major depression);

United States v. Spedden, 917 F. Supp. 404, 408 (E.D. Va. 1996) (granting downward variance under Guidelines for defendant who was sole provider for family, wife had ovarian cancer and child suffered from rare skin disease); and United States v. Kustrzyk, 2007 WL 45929 (E.D. Mich. Jan. 5, 2007) (unpublished) (granting downward departure under § 3553(a)(1) for defendant who had long history of personal responsibility, held same job for last 32 years through a divorce and episodes of mental illness that plagued ex-wife and youngest son, and was primary care giver for elderly and ill father).

Although the Court was and is not without sympathy for Petitioner and her circumstances, the Court finds that her 24-month sentence is more than justified by virtue of Petitioner's offenses, which involved her conspiring with others to defraud the United States Government by abusing her position of trust with her employer and using her special skills as a loan officer to create and sell false credit reports containing false social security numbers to co-conspirators who, in turn, used those numbers to obtain Government secured mortgage loans. (PSR at 4 to 6 ¶¶ 8 through 17 and at 8 ¶ 30). The Court finds that the sentence is further justified by the facts that Petitioner used her daughter, who was a minor at the time, to complete a portion of her offenses; and that the social security numbers which she

19

sold belonged to otherwise innocent third parties. (<u>Id</u>. at 5 ¶ 9, at 6 ¶ 16 and at 8 ¶ 31).

Ultimately, therefore, Petitioner's claim that counsel was ineffective for failing to make and support a motion for downward or variance must be flatly rejected.

### III. <u>CONCLUSION</u>

In sum, because the Court would not have granted a further departure or a downward variance on the basis of the information contained in Petitioner's Motion to Vacate, she cannot establish either that her attorney performed deficiently or that she was prejudiced thereby. Accordingly, Petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**IT IS, THEREFORE, ORDERED THAT** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: July 7, 2010

Frank D. Whitney
United States District Judge